**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | | |
|---|---|---|
| Steven H.<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 25 CV 50375<br><br>Magistrate Judge Margaret J. Schneider |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Steven H., seeks review of the final decision of the Commissioner of the Social Security Administration denying him disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

## BACKGROUND

### A. Procedural History

On January 27, 2016, Steven H. ("Plaintiff") filed a Title II application for disability and disability insurance benefits alleging disability beginning September 1, 2014. R. 76. The Social Security Administration initially denied his claim and upon reconsideration after a hearing. R. 1-3. Following a denial of review from the Appeals Council, this Court entered an agreed remand for further consideration on September 16, 2020. *See* 19 CV 50328. On March 16, 2021, Administrative Law Judge Jessica Inouye held a hearing, and on March 31, 2021, she issued an unfavorable decision. R. 484-497. Plaintiff filed a second appeal with this Court and on March 6, 2023, this case was again remanded for further consideration. *See* 21 CV 50257.

A remand hearing was held before ALJ Kevin Vodak ("ALJ") on May 15, 2024. R. 937-974. Plaintiff, who was represented by counsel, appeared and testified. *Id*. Dr. Steven Golub, an impartial medical expert, and Kimberly Eisenhuth, an impartial vocational expert also appeared and testified. *Id*. On July 11, 2024, ALJ Vodak issued an unfavorable decision. R. 904-928. The Appeals Council denied review on July 1, 2025. R. 894-900. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). The parties have consented to the jurisdiction of this Court. *See* 28 U.S.C. § 636(c); [10]. On February 9, 2026, Plaintiff filed his motion to reverse and remand the Commissioner's decision [25]. Subsequently, Commissioner filed his memorandum in support of summary judgment and response to Plaintiff's motion [28]. Plaintiff has also filed a reply brief [31]. This case is ready for the Court's review.

### B. The ALJ's Decision

In his ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of September 1, 2014, through his date last insured of March 31, 2019. R. 907. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the right knee, fibromyalgia, diabetes mellitus with polyneuropathy, obesity, major depressive disorder, and anxiety. R. 907-08. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. R. 908-11.

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that he could frequently reach in all directions bilaterally and frequently handle and finger bilaterally. Plaintiff could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds, and occasionally balance, stoop, kneel, crouch, and crawl. Plaintiff could have no exposure to unprotected heights or moving mechanical parts, no exposure to extreme heat or cold, and no exposure to vibration. Plaintiff was restricted to understanding, remembering, and carrying out simple instructions for simple, routine tasks, due to a moderate limitation in concentration, persistence, or pace. Plaintiff could have no hourly production requirement but could meet end-of-day goals and was able to make simple work-related decisions. He could have occasional interaction with coworkers and the public, but no team or tandem tasks. Plaintiff was able to be exposed to no more than occasional changes in the job setting. R. 911-24.

At step four, the ALJ found that Plaintiff had no past relevant work experience. R. 924. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including document preparer, escort driver, and addresser. R. 925-28. The ALJ further found that Plaintiff could also perform the job of touch up screener – printed circuit board assembly. R. 926. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from September 1, 2014, through March 31, 2019, the date last insured. R. 928.

## STANDARD OF REVIEW

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). "Substantial evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited

role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id.* at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id.* at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id.* Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff presents three arguments for the Court's review: 1) the vocational expert's ("VE") testimony is not based on substantial evidence; 2) the ALJ's medical opinion analysis is flawed; and 3) the ALJ's subjective symptom assessment is in error. As detailed below, the Court finds that the ALJ's decision was supported by substantial evidence and not patently wrong; accordingly, the Court finds no error.

### Vocational Findings at Step Five

Plaintiff contends that the ALJ erred at step five by relying on the VE's testimony that there existed in significant numbers, occupations in the national economy that Plaintiff could perform. The VE testified that considering an individual of Plaintiff's age, education, and RFC, there existed a significant number of sedentary and unskilled jobs in the national economy, including document preparer (14,000 jobs); escort vehicle driver (40,000 jobs); and addresser (2,000 jobs). R. 965-66. The VE further testified that the job of touch-up screener, printed circuit board assembly (3,000 jobs) would also be available to Plaintiff. R. 967. First, Plaintiff asserts that the ALJ erred in citing to the position of escort vehicle driver because the VE's reliance on the Dictionary of Titles' ("DOT") classification of the job as sedentary work conflicted with a recent opinion contained in Job Browser Pro that this job should be classified as light work. Plaintiff argues this error is significant because if the job of escort vehicle driver is removed, only 16,000 jobs in the national economy remain – a number Plaintiff argues is insufficient. Plaintiff next argues that the ALJ erred in relying on the VE's testimony as to the job of document preparer. He asserts the job

requirements of document preparer – as noted through the VE's example at Blue Cross Blue Shield – contains skills and duties beyond those the VE testified to. Plaintiff also argues that the Occupational Outlook Handbook ("OOH") lists the job of document preparer as a general office clerk and, again, requires tasks beyond VE's testimony and is uncited by the ALJ in his decision. Lastly, Plaintiff argues the ALJ's decision fails to address how social interaction bears on the facts of the case or the RFC.

As to the job of escort vehicle driver, at the hearing the VE was asked by Plaintiff's counsel if she was aware that Job Browser Pro "put out a statement" that they disagree with escort vehicle driver being classified as sedentary work, stating that it should be classified as light work. The VE testified that she was not aware of that statement. R. 970. Plaintiff argues it was error for the ALJ to rely on the VE's testimony stating that a clear conflict exists by the VE being unable to explain the conflict between the DOT and Job Browser Pro, especially considering that Job Browser Pro was the source used by the VE. However, in his decision, the ALJ noted this but pointed out that the VE is entitled to rely on the DOT for job classification rather than a source such as Job Browser Pro. The Court agrees. Information from Job Browser Pro does not replace the SSA's policy on relying on the DOT. R. 926-27. *See* EM-21065 REV ("We remind DDS and SSA adjudicators, vocational specialists (VS), and vocational experts (VE) that while these references are useful tools, they do not replace SSA policy or adjudicative judgment and decision-making."); *Devonna S. v. Bisignano*, No. 24-CV-8944, 2026 WL 323279, at *4–5 (N.D. Ill. Feb. 6, 2026) ("Nor was the ALJ required to rely on the O*NET, despite Plaintiff's use of this resource. It was perfectly appropriate for the VE to testify, as she did, that both jobs are still performed very similar to the description in the DOT." (citations and quotations omitted)). Additionally, the VE appropriately used the DOT for job classification and Job Browser Pro for estimating job numbers in the national economy. *Fetting v. Kijakazi*, 62 F.4th 332, 337 (7th Cir. 2023) ("The Social Security Administration utilizes the job classification system in the U.S. Department of Labor's *Dictionary of Occupational Titles* (DOT), but the DOT does not provide estimates of the prevalence of these jobs in the national economy."). Therefore, the Court finds no error in the ALJ's reliance on the VE's testimony that the job of escort vehicle driver is classified as a sedentary job pursuant to the DOT.

However, even if the Court could find that that the ALJ improperly relied on the VE's testimony that the escort vehicle driver job was an appropriate sedentary position for Plaintiff, the Court is further unpersuaded by Plaintiff's argument that the exclusion of this position would leave only 16,000 in the national economy – a number short of constituting a significant number of jobs in the national economy. Plaintiff overlooks the ALJ's finding that Plaintiff could also perform the job of touch-up screener – printed circuit board assembly. The VE testified that this is an unskilled sedentary job with approximately 3,000 positions nationwide. This puts the total number of jobs available in the national economy to 19,000 – a number not challenged by Plaintiff as insufficient. "Courts in this jurisdiction have held that as few as 17,000 jobs nationally constitute a significant number. *Nilda G. v. O'Malley*, No. 22-cv-1542, 2024 WL 4647855, at *4, (N.D. Ill. Oct. 31, 2024) (17,000 jobs is significant); *see also Dorothy B. v. Berryhill*, No. 18-cv-50017, 2019 WL 2325998, at *7 (N.D. Ill. May 31, 2019) (17,700 jobs is significant); *Misty H. v. Kijakazi*, No. 21-cv-3717, 2022 WL 4182390, at *6-7 (N.D. Ill. Sept. 13, 2022)." *Devonna S.*, 2026 WL 323279, at *5.

Next, Plaintiff argues the job of document preparer could not be performed within the limitations of Plaintiff's RFC. At the hearing, the VE testified that the job of document preparer is routine, simple, and repetitive. As an example, the VE testified to placing someone at Blue Cross Blue Shield ("BCBS") to perform this job. R. 969-70. Plaintiff argues that, based on his Google research, the job requirements at BCBS did not support the VE's testimony in that the job required the ability to cover multiple tasks in a fast-paced work environment. However, Plaintiff's argument is undeveloped and unpersuasive. Plaintiff fails to explain how he would be unable to perform the BCBS job or how the BCBS job conflicts with Plaintiff's RFC. Plaintiff further argues that the VE's testimony as to the document preparer job was rebutted by the Occupational Outlook Handbook ("OOH"), which "lists the job as a general office clerk," Skilltran, which lists the job as "V" for performing a variety of duties, and the VE Handbook, which provides that if a hypothetical limits a claimant to "simple instructions," then the GED reasoning level should be 1 or 2 (not 3) if possible. [25], pp. 10-11. Essentially, Plaintiff argues that the ALJ's failure to address these three concerns constitutes error. However, Plaintiff fails to explain how the ALJ"s decision was not supported by substantial evidence where the ALJ relied on the DOT and the VE's testimony. Additionally, as to Plaintiff's argument that the ALJ should have relied on the VE Handbook for reasoning level guidance, courts have rejected this argument, finding that the Handbook is neither binding nor a resource with which an ALJ is expected to be familiar. See *Heup v. Comm'r of Soc. Sec. Administration*, No. 19-CV-1256-pp, 2023 WL 3955146, at *4–5 (E.D. Wis. June 11, 2023) ("[T]his argument does not support a finding that there was an obvious, apparent conflict that the ALJ should have identified and resolved without any assistance. The Handbook is a tool for vocational examiners… the Handbook is not a binding legal authority that the ALJ or the court must follow.").

Finally, Plaintiff argues that the ALJ failed to explain how Plaintiff's limitations as to social interaction would affect his RFC. At the hearing, the VE was asked if there would be "more than occasional interaction with coworkers" for the three jobs the VE provided. The VE testified that during a probationary period, there could be more than occasional contact with coworkers, especially with the document preparer job. As to the other two jobs, there would be more of a short-term demonstration and then a claimant would shadow someone for a short period of time. R. 972-73. The VE further testified that it "would depend upon the employer and their training practices." R. 973. In his decision, the ALJ acknowledged this testimony. R. 927. In his brief, Plaintiff fails to provide any substantive argument in support of his position that this testimony is in conflict with the Plaintiff's RFC. Plaintiff provides a conclusory statement: - "…this testimony calls into question whether these jobs could be performed within the parameters of Hardt's RFC" ([25], p. 12) - without providing any support or record evidence drawing a conflict between Plaintiff's RFC and interaction with coworkers. Additionally, Plaintiff does not provide any support for the argument that a person performing one of the three jobs testified to by the VE would have to handle more than occasional interaction with coworkers. The Court rejects this undeveloped and unsupported argument.

For the above reasons, the Court finds that the VE's testimony and the ALJ's subsequent findings in relation to the testimony are based on substantial evidence. The Court finds Plaintiff's arguments unpersuasive.

**ALJ's Medical Opinion Evidence Analysis**

Plaintiff argues that the ALJ's analysis of the medical opinions was flawed. He takes issue with the ALJ's findings as to the medical expert, Dr. Steven Golub, state agency physician, Dr. Sandra Bilinsky, and Plaintiff's treating physician, Dr. Syed R. Zaidi. The Court concludes that the ALJ's analysis of the medical opinions was supported by substantial evidence.

First, Dr. Golub opined that Plaintiff could perform "light work" with certain restrictions, including standing and/or walking for six hours during an eight-hour workday, frequently reaching and fingering, and avoiding exposure to ladders or scaffolds, unprotected heights, extreme temperatures, and vigorous vibration. R. 951-52. While the ALJ adopted these limitations, he added additional restrictions to the RFC and found that Plaintiff was more suited to performing "sedentary work" with an additional restriction of no exposure to unprotected heights. R. 920. Specifically, the ALJ found that "the relevant evidence of record including the claimant's consistent reporting of all over body pain and fatigue, physical examination findings of tender points, and diagnoses of and treatment for fibromyalgia is more consistent with fibromyalgia as a definitive diagnosis." R. 920. Plaintiff argues that the ALJ should have afforded Dr. Golub's opinion "little weight" instead of "some weight." He bases this position on the fact that at the hearing, Dr. Golub questioned Plaintiff's fibromyalgia diagnosis, positive findings and testing based on subjective responses, and that Dr. Golub is not a specialist (in fibromyalgia), but an internist. Plaintiff further cites to multiple places in the record where Dr. Golub "missed" evidence and dismissed relevant testing evidencing support of Plaintiff's limitations. Despite this, Plaintiff does not explain how the ALJ erred by not affording Dr. Golub's opinion "little weight." As noted above, the ALJ acknowledged Plaintiff's fibromyalgia diagnosis and further, provided a greater RFC limitation, based on the record evidence, by restricting Plaintiff to sedentary work. The Court finds the ALJ's analysis of medical expert Dr. Golub to be based on substantial evidence.

Second, as to the opinion of Dr. Bilinsky, the ALJ afforded her opinion "some weight." The ALJ's determination noted that Dr. Bilinsky's findings reflect those of Dr. Golub (with an additional limitation to occasional balancing), including a diagnosis of fibromyalgia. R. 921. The ALJ found that while Dr. Bilinsky's findings as to Plaintiff's limitations were supported by the record, Dr. Bilinsky did not review the entire record. Therefore, the ALJ found that "[t]he complete evidence of record including physical examination findings, treatment notes, and subjective reporting, is more consistent with a limitation to sedentary work with greater postural limitations as well as environmental and manipulative limitations. As such, these findings are given less weight." *Id.* As with the ALJ's determination regarding Dr. Golub, the ALJ found further limitations than those identified by Dr. Bilinsky. The Court cannot assign error to this analysis. "[A]n ALJ doe not err when he finds a claimant to have an RFC which is more limited than that ascribed by the medical experts." *Poole v. Colvin*, 12 C 10159, 2016 WL 1181817, at *8 (N.D. Ill. March 28, 2016); *see also Karla J.B. v. Saul*, 19 CV 50019, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020) ("Essentially, Plaintiff argues the ALJ erred by placing more – not fewer – restrictions on Plaintiff's RFC…this is a quizzical argument.").

Finally, Plaintiff argues the Court erred by affording "little weight" to the opinion of Plaintiff's primary care physician, Dr. Zaidi. "For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling

weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) (citing 20 C.F.R. 404.1527(c)(2)). The treating physician rule can be understood as a two-step process. *Wallace v. Colvin*, 193 F. Supp. 3d 939, 946 (N.D. Ill. 2016). First, the ALJ must determine whether to give the treating physician's opinion "controlling weight," by evaluating if the opinion is both well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). A treating physician has "greater familiarity with the claimant's condition and circumstances," such that an ALJ may only discount a treating physician's opinions based on good reasons "supported by substantial evidence in the record." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). *See also Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). A treating physician's opinion is "entitled to controlling weight only if it is supported both by medical findings and a consistent record." *Gebauer v. Saul*, 801 F. App'x 404, 409 (7th Cir. 2020).

If the ALJ decides not to give controlling weight to a treating physician's opinion, he must proceed to the second step and evaluate certain checklist factors to determine the amount of weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). These factors include examining relationship; treatment relationship (length and nature of treatment relationship and frequency of examinations, as well as nature and extent of the treatment relationship); supportability; consistency; specialization; and other factors. 20 C.F.R. § 404.1527(c). While the Court "will not vacate or reverse an ALJ's decision based solely on a failure to expressly list every checklist factor, we do expect the ALJ to analyze the treating source's medical opinion within the multifactor framework delineated in the regulation." *Ray v. Saul*, 861 F. App'x 102, 105 (7th Cir. 2021) (internal citation omitted).

In his determination, the ALJ provided a thorough review of Plaintiff's medical evidence. R. 912-17. As to Dr. Zaidi, the ALJ examined his January 2021 opinion, as well as his April 2024 opinion. R. 921-22. The ALJ gave "little weight" to each opinion, finding Dr. Zaidi's opinions not well supported and not sufficiently consistent with other substantial evidence in the record. The ALJ proceeded to the second step of the analysis and considered certain checklist factors to determine how much weight to give the opinions. The ALJ acknowledged the examination and treating relationship by noting that Dr. Zaidi was Plaintiff's treating physician but pointing out that Dr. Zaidi only saw Plaintiff every six months and maintained a short treatment relationship with Plaintiff during the relevant period – beginning in mid-2018 through the date last insured of March 31, 2019. R. 921. The ALJ detailed Plaintiff's visits with Dr. Zaidi beginning in June 2018, noting Plaintiff saw Dr. Zaidi for a diabetic follow-up. R. 916. Plaintiff was noncompliant with his medications at that time and reported feeling weak with neuropathy in his hands and feet, suggesting fibromyalgia. *Id*. Despite this report, Dr. Zaidi indicated fibromyalgia was unlikely, and as indicated in the ALJ's decision, physical examination showed significant point tenderness along fibromyalgia locations, decreased monofilament sensation in the feet, rash on the hands, and thickening and discolored finger and toenails. *Id*. In July of 2018, Plaintiff presented to Dr. Zaidi with improved medication compliance, but continued discomfort. *Id*. In the fall of 2018, when Plaintiff complained of fibromyalgia flare ups, Dr. Zaidi recommended physical therapy. R. 917. Plaintiff was treated with physical therapy from November through early December 2018. In mid-December 2018, Dr. Zaidi saw Plaintiff again. At that time, Plaintiff reported well-controlled

symptoms. *Id*. Plaintiff was discharged in January 2019 with partial goals met. *Id*. The ALJ goes on to note that Plaintiff was seen by Dr. Zaidi in March 2019 as a follow-up for his diabetes. His blood work showed significant improvement, and his fibromyalgia was stable at that time. *Id*.

The ALJ reviewed Dr. Zaidi's January 2021 Fibromyalgia Residual Functional Capacity Questionnaire. R. 921, 780-784. The ALJ noted that Dr. Zaidi opined that Plaintiff would need to take unscheduled breaks, would need to lie down, would be off-task 25% of the time or more, was incapable of even low stress work responsibilities, would have good days and bad days, and would be absent from work more than four time per month. R. 921. The ALJ determination also stated that Dr. Zaidi cited to Plaintiff's symptoms, diagnosis of diabetes, neuropathy, and fibromyalgia. *Id*. The decision also noted that Dr. Zaidi indicated specific areas of pain, tender points, and poor prognosis, stating that Plaintiff met the diagnostic criteria for fibromyalgia. *Id*. The ALJ acknowledged that Dr. Zaidi was Plaintiff's treating provider but noted that Dr. Zaidi saw Plaintiff only every 6 months with a short treatment relationship during the relevant period of time and made only some objective findings. The ALJ also stated that Dr. Zaidi was not a fibromyalgia specialist and not a rheumatologist. *Id*. Importantly, the ALJ also remarked that Dr. Zaidi's January 2021 opinion was rendered almost 2 years after Plaintiff's date last insured. The ALJ found that Dr. Zaidi's objective findings not consistent with such significant non-exertional limitations and gave Dr. Zaidi's January 2021 opinion little weight. *Id*. The ALJ further analyzed Dr. Zaidi's April 2024 opinion taken from his Physical Residual Functional Capacity Questionnaire. R. 921-22, 1403-07. This opinion was more restrictive than Dr. Zaidi's January 2021 opinion, noting that Plaintiff would need to walk around every 30 minutes, would need to shift positions at will and elevate his legs while standing, would need an assistive device to stand/walk, could rarely lift/carry up to 10 pounds, could rarely move his head or hold static, could rarely twist, could never stoop/crouch/climb, and had significant limitations in handling, fingering, and reaching. R. 922. The ALJ acknowledged some objective findings but stated they were not supportive of such significant limitations. The ALJ determined that the complete evidence of record was more consistent with Plaintiff's ability to perform full-time work at a less than sedentary level, with less significant postural, manipulative, and environmental limitations, and with no findings of a need for extended unscheduled breaks or significant time off-task or absenteeism. *Id*. The ALJ also recognized that Dr. Zaidi's April 2024 opinion was rendered over 5 years after Plaintiff's date last insured. *Id*. The ALJ gave Dr. Zaidi's April 2024 opinion little weight. *Id*. The ALJ's decision also addressed Dr. Zaidi's January 2021 opinion related to Plaintiff's mental functioning, which indicated that Plaintiff had predominately marked to extreme limitations in mental functioning and would be absent more than 4 days per month. R. 923. Here, the ALJ pointed out that while Dr. Zaidi was Plaintiff's treating physician, the treating relationship was not established until less than a year before the close of the relevant period. *Id*. The ALJ's decision also noted that Dr. Zaidi did not cite to any objective findings, and that Dr. Zaidi is not a specialist in mental or behavioral health. *Id*. Finding that the evidence of record, including the generally unremarkable mental status examination findings, not consistent with Dr. Zaidi's significant limitations, the ALJ gave this opinion little weight. *Id*.

Plaintiff argues that the ALJ failed to explain why he determined that Dr. Zaidi's objective findings were inconsistent with the non-exertional restrictions. The Court disagrees. As noted above, the ALJ's decision includes a detailed review of Plaintiff's medical record, including his treatment history with Dr. Zaidi in 2018 and 2019. R. 916-917. These notes included findings that

Plaintiff was noncompliant with medication, examinations were largely unremarkable, treatments were effective, and improvements were documented. *Id*. Years later, in the opinions contained in the fibromyalgia and physical RFC questionnaires completed by Dr. Zaidi, Dr. Zaidi found extreme restrictions. The ALJ found these restrictions to be inconsistent with Dr. Zaidi's treatment notes. Similarly, the ALJ analyzed Dr. Zaidi's January 2021 mental RFC questionnaire. There, the ALJ determined that Dr. Zaidi's marked to extreme limitations in mental functioning was not consistent with the complete medical record, including generally unremarkable mental status examination findings. R. 923. The ALJ also pointed to the relatively short treatment relationship between Plaintiff and Dr. Zaidi and acknowledged that Dr. Zaidi is not a specialist in mental or behavioral health. Importantly, the ALJ noted that Dr. Zaidi did not cite to any objective findings in support of his opinion. *Id*. For these reasons, the Court concludes that the ALJ properly analyzed the supportability and consistency and other checklist factors in Dr. Zaidi's opinions and, therefore, did not err in assigning little weight to Dr. Zaidi's opinions.

As noted above, the ALJ's determination must be supported by "substantial evidence." Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gedatus v. Saul*, 994 F3d 893, 900 (7th Cir. 2021). Further, the threshold to determine such sufficiency is not high: "ALJs are 'subject to only the most minimal of articulation requirements' – an obligation that extends no further than grounding a decision in substantial evidence." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024) (quoting *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024)). Moreover, "[w]hen reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052-53. Here, the ALJ performed a more than adequate job of analyzing the medical record, including the medical opinions, and making an independent determination regarding the weight to give the medical opinions. The ALJ specifically noted why he designated the weight he did to each medical expert. It is not this Court's task to substitute its judgment for that of the ALJ, including the reweighing the medical expert opinions. Here, substantial evidence supports the ALJ's determination as to the medical expert opinions.

**Evaluation of Subjective Symptoms**

Finally, Plaintiff contends that the ALJ failed to provide a basis for discounting Plaintiff's statements concerning his subjective symptoms, specifically his fibromyalgia, and therefore rendered an RFC that did not account for all of Plaintiff's limitations. The Court finds that the ALJ reasonably evaluated Plaintiff's subjective symptoms.

ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*. When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court]

will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

The Seventh Circuit has held that "disability claims rooted in the effects of fibromyalgia warrant careful attention given the nature of the illness." *Hohman v. Kijakazi*, 72 F.4th 248, 252 (7th Cir. 2023). Additionally, the Social Security Administration has recognized the complexities of fibromyalgia and has promulgated a policy interpretation ruling addressing this condition. Under SSR 12-2p (Evaluation of Fibromyalgia), the ALJ is obligated to consider the claimant's symptoms, and "ensure that there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSR 12-2p. Plaintiff argues the ALJ summarized rather than analyzed Plaintiff's medical history and failed to properly consider his "statement of symptoms" ([25], p. 21) and how treatments failed to control or ameliorate these symptoms. In furtherance of his argument, Plaintiff notes the places in the record that support a finding of disability, mainly as it relates to Plaintiff's activities of daily living. Plaintiff cites to the Seventh Circuit: "[A]lthough it is appropriate for an ALJ to consider a claimant's daily activities when evaluating their credibility, SSR 96-7p, this must be done with care. We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time" *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Here, the Court will examine whether the ALJ did an adequate job assessing the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c).

The ALJ found Plaintiff had medically determinable impairments that could reasonably be expected to cause his alleged symptoms, satisfying the first step of the two-step process in evaluating subjective symptoms. The ALJ then determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. Plaintiff argues the ALJ erred in this analysis.

The Court finds that the ALJ's decision contained more than adequate support. The narrative noted that in 2014, Plaintiff was diagnosed with arthritis, suspected to be affecting multiple joints. R. 913. This led to physical therapy and medication management. *Id*. Plaintiff reported that despite the physical therapy, he was still experiencing all over body pain and fatigue. He also reported medication was not helpful. The ALJ's decision indicated gradual progress and no physical examination findings. *Id*. Plaintiff was discharged from physical therapy in November 2014, having missed his last appointment. *Id*. Plaintiff did not return to care until March 2015, following a fall. R. 914 Except for lumbar pain, no other findings were noted. Plaintiff's A1C and glucose levels were elevated, and medications were restarted. *Id*. In April 2015, Plaintiff reported feeling "much better" and continued with his medication. He returned to care 4 months later and advised he had not been taking his medication and continued muscle pain. However, no abnormal physical examination findings were noted. *Id*. These reports continued through the end of 2015. Plaintiff was placed on a new medication following a diagnosis of fibromyalgia (despite continued

normal physical examination findings). Laboratory results showed improvement in A1C and glucose levels. However, Plaintiff still reported no relief in pain, even with medication. *Id*. Plaintiff was diagnosed with chronic pain, secondary to arthritis and fibromyalgia, despite no physical examination findings. *Id*. In early 2016, Plaintiff presented to a new provider, continuing to complain among other things, of joint pain, burning, weakness. *Id*. Fibromyalgia was again diagnosed despite no findings of swelling or tender points. Medication was prescribed. *Id*. Plaintiff returned to care in June 2016, reporting good relief in headaches and other concerns. No abnormal physical examination findings or related complaints were noted. *Id*. Plaintiff underwent a consultative evaluation, reporting all over pain. The results showed difficulty in walking and other certain flexions, extensions, and adductions, and also noted normal gait, grip strength, motor muscle tone, no swelling, and normal rotations. Plaintiff reported he was able to maintain his own personal care, drive, and was not in need of an assisted device. R. 915. At the end of 2016, Plaintiff was seen by a rheumatologist for all over pain and occasional swelling in his lower extremities, and no improvement with medication. *Id*. The examination noted, for example, irritability with some motion, positive right-sided straight leg raising, limited ankle movement, and right knee swelling. However, the findings were otherwise unremarkable with normal upper extremity strength with no swelling, no other spinal or lower extremity findings. *Id*. No medications were prescribed. Plaintiff followed up with care in early 2017, reporting continued symptoms and fatigue. R. 916. Physical examination revealed continued obesity, tenderness, and multiple tender points. However, no swollen joints or reduced range of motion was noted. *Id*. In the spring of 2017, Plaintiff reported medical marijuana was helpful for pain and his sleep had improved. No positive muscular skeletal findings were noted at that time. The following month, no abnormal examination findings were noted. Similar findings were reported in July and through late summer 2017.

No care was noted from summer 2017 until June 2018, when Plaintiff presented for a diabetes follow-up. R. 916. At that time, Plaintiff was non-compliant with his medication. He reported feeling weaker and complained of neuropathy in his hands. Physical activity and diet were discussed with Plaintiff at that time, and his diabetes medication was updated. A physical examination noted significant point tenderness along fibromyalgia locations. *Id*. In July 2018, physical examination findings were unremarkable, and Plaintiff had a normal gait. In November 2018, Plaintiff underwent a physical therapy evaluation for all over pain. R. 917. Plaintiff was set on a course of physical therapy through early December 2018. By late 2018, Plaintiff's symptoms were noted to be overall well-controlled with no abnormal examination findings noted. *Id*. Plaintiff was discharged from physical therapy in late January 2018, with partial goals met. Plaintiff continued to use medical marijuana for his fibromyalgia, which was noted to be stable. *Id*. While Plaintiff was still considered obese, no abnormal physical examination findings were noted. *Id*.

As to Plaintiff's mental health treatment, the ALJ's decision is equally adequate. The determination noted that in early 2014, Plaintiff was medicated for anxiety. R. 917. However, Plaintiff's medical record noted no further treatment for the remainder of 2014 or through 2015. From mid-2016 through Spring 2017, Plaintiff reported experiencing anxiety, forgetfulness, nervousness, depression, and moodiness. His behavior, mood, and thought process were observed as normal, and Plaintiff was referred to a behaviorist. R. 917-18. Plaintiff reported using marijuana and was able to function and care for himself and his family. R. 918. In mid-2017, Plaintiff was encouraged to see a psychiatrist. Again, his mood, affect, thought content, behavior, and judgment were noted to be normal. *Id*. In October 2017, Plaintiff reported symptoms of depression and

anxiety, along with fibromyalgia. A mental status examination noted slightly abnormal findings and Plaintiff was prescribed medication. *Id*. The following month Plaintiff presented to a new provider and was observed to be nervous and anxious. However, normal mood, affect, behavior, judgment, and thought content was noted. *Id*. Plaintiff reported to follow-up care in mid-2018. *Id*. At that time, Plaintiff advised he was not taking his medication, and the record noted normal mood, affect, and behavior. Normal mood was recorded through early 2019.

As to medical opinion evidence, as noted above, the ALJ thoroughly reviewed the opinions of medical expert, Dr. Steven Golub, state agency physician, Dr. Sandra Bilinsky, and Plaintiff's treating physician, Dr. Syed R. Zaidi. The ALJ adequately determined that some weight should be given to Dr. Golub's and Dr. Bilinsky's opinions, and little weight should be given to Dr. Zaidi's opinion. The ALJ's decision also provided an analysis of Dr. Calixto Aquino's opinion. R. 921. Dr. Aquino, a reviewing State agency medical consultant, opined that Plaintiff could perform light work with some restrictions. As with Dr. Bilinsky's opinion, the ALJ found Dr. Aquino's opinion that Plaintiff could perform light work inconsistent with the overall evidence of record including Plaintiff's physical examination findings, treatment notes and subjective reporting. *Id*. The ALJ found the record more supportive of sedentary work with postural limitations greater than those suggested by Dr. Aquino. *Id*. Additionally, the ALJ determined that treating physician Dr. Moses G. Tomacruz's opinion should be given little weight because this opinion was rendered prior to Plaintiffs' alleged onset date. *Id*. The ALJ's decision also included a review of Dr. Michael Piller's opinion. Dr. Piller, a treating physician, did not indicate any specific functional limitations on behalf of Plaintiff; therefore, the ALJ found his statements of little use and gave them little weight. *Id*. As to the State agency psychological consultants' opinions, the ALJ gave these little weight as well. *Id*. Lionel Hudspeth, Psy.D. and Tyrone Hollerauer, Psy.D. found Plaintiff's anxiety disorder to be non-severe with no limitations. The ALJ disagreed based on the full record, including Plaintiff's reports of anxiety, forgetfulness, nervousness, brain fog, depression, and moodiness. The Court finds that all of medical opinion evidence was more than adequately reviewed and scrutinized by the ALJ.

Finally, the ALJ's opinion also adequately reviewed Plaintiff's subjective symptoms regarding his performance of activities of daily living. The ALJ's decision included evidence that Plaintiff was able to care for his pets, maintain personal care with assistance, use a riding lawn mower, accompany his spouse shopping, and drive. R. 917. Plaintiff also spent time with family, at home and on the telephone, and attended church weekly. As noted earlier, there was no report of the use of an assistive device. The ALJ recognized that Plaintiff was capable of a variety of activities of daily living, but also that limitations in Plaintiff's RFC would be necessary. *Id*.

The Court finds that the ALJ sufficient explained and supported his decision. Throughout his determination, the ALJ noted findings in support of disability, acknowledged Plaintiff's statements throughout the medical record, accepted Plaintiff's limitations, and more than adequately weighed the opinions of the medical experts, finding, as noted, more restrictions than recommended. The ALJ's opinion is complete and thorough, including details of medical services spanning years of treatment. While Plaintiff argues that the ALJ's decision was an improper summary and not an analysis, the ALJ thoroughly explained his determination that Plaintiff was able to perform sedentary work by noting evidence throughout the record that did not support a finding of greater limitations. *See* R. 923-24. In support of his position, Plaintiff "picks at threads"

of the ALJ's decision, but viewing the decision as a whole, "the ALJ's opinion is supported by some explanation and support and therefore is not patently wrong." *Jeanette C. v. O'Malley*, No. 22-cv-5315, 2024 WL 2292833, at *5 (N.D. Ill. May 21, 2024) (quotations omitted). Specifically, the ALJ provided exhaustive details as to Plaintiff's fibromyalgia diagnosis, including his subjective symptoms, and more than satisfied his obligation under. SSR 12-2p. *See Susan G. v. Kijakazi*, 20 C 6110, 2023 WL 2525495, at *7 (N.D. Ill. March 15, 2023) ("…when evaluating fibromyalgia or any other condition, the ALJ must not reject complaints about pain *solely* because of the objective evidence, but the ALJ is entitled to consider the objective evidence as one factor in evaluating a plaintiff's subjective symptom reports. Here, the ALJ reasonably concluded that objective evidence in the record – including specific exam findings that Plaintiff had normal gait, normal neurological findings, negative straight leg raise, and normal range of motion in her lumbar area with some pain worsening on extremes of flexion and extension – was inconsistent with Plaintiff's reported symptoms."). *See also Swiecichowski v. Dudek*, 133 F.4th 751, 758 (7th Cir. 2025) ("…SSR 12-2p makes clear that, when assessing a claimant's [RFC], the ALJ may consider all relevant evidence in the case record. This makes sense because, unlike some other pain-causing disorders, fibromyalgia results in few physical manifestations. This does not mean, however, that clinical evidence is irrelevant in fibromyalgia cases. Once the claimant has established that [his] fibromyalgia is a medically determinable impairment, the ALJ still needs to resolve whether the severity of the resulting symptoms limits the claimant's ability to work; this is the heart of the RFC analysis.").

The Court finds that the ALJ's decision was supported by substantial evidence. *Warnell*, 97 F.4th at 1053. It appears that Plaintiff is asking the Court to reweigh the evidence and come to a contrary conclusion. This is not the role of the Court. "If substantial evidence supports the ALJ's conclusion, we will not reweigh the evidence or resolve debatable evidentiary conflicts." *Staniszewski v. Bisignano*, No. 24-2206, 2026 WL 1737009, at *2 (7th Cir. 2026) (citations and quotations omitted). Here, the ALJ's analysis and decision as to the vocational experts' testimony, the medical opinion evidence, and Plaintiff's subjective symptoms, is well-supported by substantial evidence and the Court finds no error.

## CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's decision.

Date: November 16, 2026

ENTER:

Margaret J. Schneider

United States Magistrate Judge